**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| LAURA ELIZABETH BELL, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CRAFT REVOLUTION, LLC d/b/a ARTISANAL BREWING VENTURES; ARTISANAL BREWING VENTURES CHARLOTTE, LLC; and DOE DEFENDANTS 1-10. <br><br> Defendants. | Civil Action No.: <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Laura Elizabeth Bell ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      This is a class and collective action brought on behalf of "Tipped Employees" who work or have worked at any of the taprooms ("Taprooms") that are owned, operated and/or otherwise managed or controlled by Defendants Craft Revolution, LLC d/b/a Artisanal Brewing Ventures and Artisanal Brewing Ventures Charlotte, LLC (together "ABV," the "Company," or "Defendant"), and have been subject to the unlawful practices detailed herein.

2.      Defendants operate Taprooms under the following brands: Southern Tier Brewing Company, Victory Brewing Company, Bold Rock Hard Cider, Sixpoint Brewery, and Southern Tier Distilling Company.

3.      According to Defendants' website, ABV ". . . has operations in Lakewood, Buffalo, Cleveland, Pittsburgh, metro Philadelphia, Brooklyn, Asheville, Mills River, and Nellysford." *See https://artbrewventures.com/about/* (last visited December 5, 2023).

4. Although ABV promotes the "independence" of the individual brands, ABV functions as a single integrated enterprise – a taproom that serves creative craft beers and, in the case of Southern Tier Distillery, craft liquors.

5. Defendants maintain a single website that incorporates each of the brands' Taprooms.

6. On its website, Defendants identify and/or refer to the Taprooms as a single entity. Specifically, the website contains language that states, *inter alia*: (i) "The company is a top ten regional craft company in the U.S."; and (ii) "ABV is building a portfolio of breweries and brands, including Southern Tier, Victory, Sixpoint, and Bold Rock." *See https://artbrewventures.com/about/* (last visited December 4, 2023). The website also encourages individuals to "Become part of the Artisanal Brewing Ventures team and join a truly unique and progressive organization . . ." and states that "At ABV, we take pride in supporting the health and well-being of our employees . . ." *See https://artbrewventures.com/careers/* (last visited December 5, 2023).

7. As detailed below, employees' checks identify ABV as the employer and employees operate under an employee handbook that is titled "Artisanal Brewing Ventures Taproom Employee Handbook."

8. Consequently, upon information and belief, each of the Taprooms at issue maintain common ownership, have interrelated operations and share the same employment policies, including those relating to the compensation of Tipped Employees.

9. For example, when there was a public relations issue or health related issue at the Taproom in Pittsburgh, the CEO of ABV, John Coleman, would come to the Pittsburgh Taproom to address it himself.

10.     As such, the employment practices complained of herein are applicable to all Tipped Employees employed at each and every Taproom, as Defendants utilized common labor policies and practices at each of its locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

11.     According to ABV's website, ABV has the following Taprooms in North Carolina: Bold Rock in Asheville; Bold Rock in Mills River; Taproom-Brewers in Charlotte. *See https://artbrewventures.com/taproom-experience/* (last visited December 4, 2023). It has the following Taprooms in Virginia: Bold Rock in Carter's Mountain and Bold Rock in Nellysford. *Id.* In Ohio, there is a Southern Tier Taproom in Cleveland. *Id.* In Pennsylvania, there are the following Taprooms: Victory in Philadelphia; Victory in Parkesburg; Victory in Downingtown; Victory in Kennett Square; and Southern Tier in Pittsburgh. *Id.* In New York, it has the following Taprooms: Southern Tier in Buffalo; Sixpoint in Brooklyn; Southern Tier in Lakewood; and Southern Tier Distillery in Lakewood.

12.     Defendants employs individuals in a tipped capacity, namely "servers" ("waiters and "waitresses"), "server assistants," "food runner," and "bartenders" (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.

13.     As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*[1] by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and PMWA.

---

[1] The PMWA and WPCL are collectively referred to as "PA State Laws."

14.     Due to Defendants' unlawful failure to properly inform Tipped Employees of its intention to utilize a "tip credit" as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees. The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

15.     In addition, Defendants violated the PMWA when they required Plaintiff and other Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the day (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work). This is in contravention of applicable Pennsylvania state law.

16.     Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes, but is not limited to, checking garbage cans and taking out the garbage if necessary, stocking growlers, shutting all outdoor panels, scrub grates, shutting off outside beer taps, flipping chairs onto bar, unlocking/locking all coolers, sweeping front of bar and under fixtures, and scrub bar floor with floor cleaner, cut lemons, cleaning the monitors, polish silverware, and setting up/breaking down prep stations/bar area.

17.     Indeed, in one text message to Plaintiff and other Tipped Employees, a manager advised staff that "Pulling the kegs in at night is now the bar responsibility." The employees were advised that if they "don't know how to work the pallet jack" to ask manager and that "Side work sheets" would be updated accordingly. *See* Exhibit A attached hereto.

18.     Notably, much of this work was performed either before or after the restaurant

4

opened/closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

19.     Despite performing this unrelated non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

20.     Finally, as set forth below, Plaintiff and other Tipped Employees were denied wages due and owing to them due to Defendants' practice of requiring Tipped Employees to work "off the clock" ("OTC"). This typically happened at the start of the shift, when Defendants would not begin to record an employee's time until the Taproom actually opened to the public, and at the end of the shift when management would clock everyone out so they could perform end of night management tasks even though the Tipped Employees were still performing closing work. This OTC work necessarily meant that these employees were undercompensated for their hours worked.

21.     As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

22.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

23.     Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

24.     Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to PA State Laws.

25.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated

persons composed of:

> All current and former Tipped Employees who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

26. The Collective Class and the PA Class are hereafter collectively referred to as the "Classes."

27. Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid OTC work; and (iii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

28. Plaintiff alleges on behalf of the PA Class that Defendants violated the PMWA by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked. In addition, Defendants also violated the PMWA by failing to pay the PA Class members the full minimum wage for time spent performing non-tip generating work. Finally, Plaintiff alleges on behalf of the PA Class that Defendants violated the WPCL by failing to pay Plaintiff and members of the PA Class all wages due and owing (the minimum wage) as they had agreed upon.

## PARTIES

29. Plaintiff Laura Elizabeth Bell ("Plaintiff" or "Bell") is a resident of the Commonwealth of Pennsylvania, living in Pittsburgh, who was employed by Defendants as a "bartender" at the Southern Tier Brewing Company Taproom located at 316 N. Shore Drive, in Pittsburgh, Pennsylvania. While employed as a Tipped Employee, Defendant failed to compensate Plaintiff properly for all hours worked.

6

30.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action. Her consent is attached hereto as Exhibit B.

31.     Defendant Craft Revolution, LLC d/b/a Artisanal Brewing Ventures ("Craft Revolution") is a Delaware corporation that maintains its principal place of business at 4001 Yancey Road, Charlotte, North Carolina. In its annual report filed with the State of North Carolina, Craft Revolution describes its business as being a "parent company of breweries." Craft Revolution is listed as a Company Official ("Manager") on the annual report filed by Defendant Artisanal Brewing Ventures Charlotte, LLC. Craft Revolution was the signatory to Artisanal Brewing Ventures Charlotte, LLC's annual report filed with the State of North Carolina.

32.     Defendant Artisanal Brewing Ventures Charlotte, LLC is headquartered at 4001 Yancey Road, Charlotte, North Carolina. According to its website, ABV was founded in 2014 and through mergers and partnerships, it "is building a portfolio of breweries and brands, including Southern Tier, Victory, Sixpoint, and Bold Rock." *See https://artbrewventures.com/about/* (last visited December 5, 2023).

33.     Defendants are a single integrated enterprise with a high degree of interrelated and unified operations, sharing common labor policies including the practices complained of herein.

34.     Upon information and belief, the reason Defendants maintained the separate brands was to (i) ensure continuing customer loyalty for each specific brand and (ii) to limit the liability of Defendants.

35.     At all relevant times during the statutory period covered by this Complaint, Defendants, through their actions as an integrated enterprise, have transacted business within this District.

36.     At all relevant times during the statutory period covered by this Complaint,

7

Defendants have operated as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA. Defendants uniformly operated their Taprooms under common control for a common business purpose.

37.     Defendants are engaged in related activities, *e.g.*, activities which are necessary to the operation and maintenance of the Taprooms in the State of North Carolina, and across the United States.

38.     Defendants are a single employer with a high degree of interrelated and unified operations, sharing common officers. In addition, Defendants share common management between Taproom locations, share common employees between locations, as well as share common human resources and payroll services. All of Defendants' locations share the common labor policies and practices complained of herein.

39.     An example of the integrated operations of Defendants is the fact that Defendants sell unified gift cards ("Gift Cards") with each brand identified on the Gift Card. *See, e.g., https://abv.myguestaccount.com/en-us/guest/egift?page=cardInfo* (last visited December 5, 2023).

40.     Indeed, upon information and belief, the Gift Cards can be used at any Taproom. Thus, to members of the public, ABV effectively represents itself as a single, unified operation.

41.     Further, as evidenced on Plaintiff's pay summary, Defendants utilize the brand logos of all of their brands on Tipped Employees' pay summaries. *See* Exhibit C attached hereto.

42.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant

times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the defendants. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

43. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

44. Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

45. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants, as a single integrated enterprise, are subject to personal jurisdiction in this district.

46. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

47. The crux of the FLSA and the PA State Laws is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

48. Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

49. Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

50. Upon information and belief, all of the Defendants' locations are/were operated

under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

51.      Upon information and belief, all Tipped Employees operated under the employee handbook entitled "Artisanal Brewing Ventures Taproom Employee Handbook." The "handbook covers [ABV's] general employment policies" and directs individuals to contact the Company's Human Resources representative if they have any questions.

52.      Defendants govern and administer each Taproom location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the specific Taproom location that a customer visits.

53.      For example, each of Defendants' Taprooms offer the same basic array of products, including ABV's other brands' products, and services to the general public. Further, all the Taproom locations advertise together on the same website.

54.      Further, Defendants' Taproom locations can "share" Tipped Employees and management level personnel. Indeed, Plaintiff is aware of a Tipped Employee transferring from Charlotte to Pittsburgh, as well as another Tipped Employee transferring from the Distillery location in New York to Pittsburgh.

55.      Further, the sharing of employees also occurred on a temporary basis. For example, Plaintiff is aware of at least one server being temporarily transferred to the Buffalo location so as to help open that Taproom to the public before coming back to the Pittsburgh Taproom.

56.      Plaintiff is also aware of several individuals receiving management training at the Pittsburgh Taproom before being relocated to another Taproom to be part of that Taprooms' management team. To the best of her recollection, Plaintiff believes these managers were transferred to the Buffalo Taproom location.

10

57.     Moreover, Defendants had employees from one brand provide training on that brand's beverages at the Pittsburgh Taproom.

58.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and practices at each of its locations. Accordingly, Defendants are responsible for the employment practices complained of herein.

## PLAINTIFF'S EXPERIENCE WORKING FOR DEFENDANTS

59.     As set forth above, Plaintiff was employed by Defendants as a "bartender" in their Pittsburgh Taproom location in the Commonwealth of Pennsylvania. Plaintiff worked at this location from in or about late August/early September 2018 through the end of July 2023.

60.     Plaintiff typically worked four to five shifts per week. She would typically arrive at 3:45pm (approximately 15 minutes before the Taproom opened to the public) and would stay until approximately 11:00 p.m. to 11:30 p.m.

61.     Plaintiff's hourly wage rate from Defendants was $2.83 an hour and earned tips from customers who chose to leave a gratuity. Plaintiff does not ever recall the hourly wage being raised by Defendants above $2.83 for any day worked, irrespective of how little tips were earned or the type of work performed.

62.     Plaintiff recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.

63.     When working as a bartender, Plaintiff placed her cash tips in a bucket she shared with the other bartender(s) working with her.

64.     At the end of the night, management would collect the tip bucket and Plaintiff's drawer from her cash register and take it upstairs to perform end-of-night accounting. Management

would then advise Plaintiff and the other bartenders if there were any deductions made from the tip bucket to account for cash shortages from the cash register drawer, as well as how much tips were being provided to the server assistants and food runners.

65. Plaintiff believes that she had to use her tips to help cover cash shortages approximately once per week.

66. Further, after experiencing a customer walk-out without paying the bill (a.k.a., a dine and dash), Plaintiff was advised that Defendants would cover the cost of the bill for that instance, but that if it happened again, Plaintiff would have to cover the cost of the dine and dash herself.

67. Typically, when Plaintiff would close the Taproom, Defendants' policy was such that managers would automatically clock her out so that management could perform their end-of-night accounting even though Plaintiff was still performing closing tasks. This also occurred at the start of her shift, as the timekeeping system would not record Plaintiff's compensable work time until 4:00 p.m., even though Plaintiff began working at 3:45 p.m.

68. Consequently, Plaintiff frequently worked off-the-clock ("OTC"). Indeed, illustrated by Exhibit D, Plaintiff was still performing closing side work tasks at 11:06 p.m., even though Defendants' timekeeping system had Plaintiff clocked out at 10:30 p.m.

69. Plaintiff typically started her shift approximately fifteen minutes before the Taproom opened to the general public and stayed anywhere from one-half hour to an hour and a half after her last customer left for the day.

70. Defendants required Plaintiff and other Tipped Employees to arrive before the Taprooms opened so that they could perform certain tasks in order to ensure the Taproom was prepared for its customers immediately upon opening. These tasks included, among other things:

putting down chairs, turn on outside tap system (which required climbing on top of kegs), cut fruit, dehydrate fruit, make simple syrup, and prepare juices. Indeed, Defendants maintained a "STBC Bar Opening Checklist" that detailed side work tasks Defendants expected Plaintiff and other Tipped Employees opening the bar portion of the Taproom to perform prior to Taproom opening to the public.

71.     Further, during their shift, Plaintiff and other Tipped Employees were required to perform running side work. Such tasks included, among other things: stocking kegs and liquor, washing glassware, and stock all bar supplies. Indeed, Defendants maintained a "STBC Bar Mid-Shift Checklist" that detailed side work tasks Defendants expected Plaintiff and other Tipped Employees running the bar portion of the Taproom to perform while the Taproom was open to the public.

72.     Defendant required Plaintiff and other Tipped Employees to stay after the last customer left and the Taproom closed for the day so that they could perform certain tasks in order to ensure the Taproom was cleaned and prepared for the following day's business. These tasks included, among other things: turn off outside tap system (which required climbing on top of kegs), take out trash, mop floors, bring in empty kegs on pallets. Indeed, Defendants maintained a "STBC Bar Closing Checklist" that detailed side work tasks Defendants expected Plaintiff and other Tipped Employees closing the bar portion of the Taproom to perform after the Taproom closed to the public for the night.

73.     Plaintiff regularly was required to perform tasks that had no direct relation to her direct customer job duties. Such tasks included, but not limited to: moving kegs into the building on pallets and shutting down the building by turning off lights and locking doors at end of the night.

74.     Notably, Plaintiff was never instructed to clock in under a different job code when performing non-tip generating work or when working prior to or after the Taproom opened/closed. Indeed, to the best of Plaintiff's knowledge, Defendants did not keep track of such time separately from Plaintiff's entries into the POS system.

75.     To the best of Plaintiff's recollection, she believes she spent approximately one-third of her total shift performing side work tasks.

76.     Further, upon information and belief, Defendants had side work checklists for opening, mid-shift, and closing tasks for other tranches of Tipped Employees, including servers.

77.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

## THE TIP CREDIT PROVISION & REQUIREMENTS

### FLSA Requirements

78.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

79.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.

80.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

14

81.     As is made plain in the statute, 29 U.S.C. § 203(m), its implementing regulation, 29 C.F.R. § 531.59, and DOL Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

82.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

83.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit. In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

84.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee. In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

85.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

86.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

87.     Importantly, Fact Sheet #15 effectively sets forth in plain English what is required under the statute and regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

88.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage. If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and

the employer is liable for the full minimum wage.

89. Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference. Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

90. As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

***Pennsylvania's Requirements***

91. Pennsylvania state law has a substantially similar requirement to the FLSA's tip notification requirements. *See* 43 P.S. § 333.103(d).

92. Importantly, however, Pennsylvania mandates a higher minimum cash wage and requires employers to pay at least $2.83 per hour. Thus, under Pennsylvania law, the maximum tip credit is $4.42 per hour.[2]

93. As such, an employer cannot be said to have complied with Pennsylvania's tip credit notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in Pennsylvania (as it differs from the FLSA tip credit amount).

94. In addition, 34 Pa. Code § 231.34 also requires employers to maintain payroll records that contain the following information:

---

[2] Like the FLSA, Pennsylvania law states that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the employee. *See* 43 P.S. § 333.103(d).

(1) A symbol or letter placed on the pay records identifying each employee whose wage is determined in part by tips;

(2) Weekly or monthly amount reported by the employee, to the employer, of tips received. This may consist of reports made by the employees to the employer on IRS Form 4070;

(3) Amount by which the wages of each tipped employee have been deemed to be increased by tips, as determined by the employer, not in excess of 45% of the applicable statutory minimum wage until January 1, 1980 and thereafter 40% of the applicable statutory minimum wage. The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week;

(4) Hours worked each workday in any occupation in which the tipped employee does not receive tips and total daily or weekly straight-time payment made by the employer for such hours; and

(5) Hours worked each workday in occupations in which the employee received tips and total daily or weekly straight-time earnings for the hours.

<u>**DEFENDANTS' FAILURE TO COMPLY WITH APPLICABLE WAGE LAWS**</u>

95.     As explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

96.     Rather than comply with the notification requirements set forth in the statute, regulations, and in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees a sub-minimum wage (in Plaintiff's case, $2.83 per hour). In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

97.     Courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the

full minimum wage.

98.     Indeed, Plaintiff does not ever recall being notified by Defendants of all the requirements of tip credit notification. Rather, Plaintiff simply recalls being told that she would be paid $2.83 per hour and that, effectively, "tips would make up everything beyond that."

99.     Further indicative of Defendants' wholesale violation of the applicable tip credit provisions, Plaintiff was regularly required to surrender a portion of her tips in order to cover cash shortages in a bartender's register.

100.     In addition, Defendants also violated the tip credit provisions as Defendants did not adjust Plaintiff's hourly cash wage for those shifts where Plaintiff earned little to no tips. Indeed, to the best of Plaintiff's recollection, in January of 2023, she worked a shift of approximately ten hours and earned only about $40 in tips. No adjustment to her pay was made for this shift.

101.     Moreover, as explained above, Plaintiff also regularly worked OTC and, thus, did not receive the mandated minimum cash wage of $2.83 per hour as required by law and as she agreed to be paid by Defendants.

102.     As set forth above, these acts constitute violations of the tip credit requirements. *See, e.g.,* Fact Sheet #15.

103.     Defendants also failed to comply with 43 P.S. 231.34 insofar as it failed to notify employees in writing whenever the tip credit claimed by Defendants changed. Rather, Defendants took the maximum tip credit permissible irrespective of whether its Tipped Employee actually earned sufficient tips to substantiate the tip credit claimed.

104.     Defendants also failed to comply with 43 P.S. 231.34 insofar as they failed to notify employees in writing of the hours worked where the Tipped Employee did not receive tips. Rather, Defendants took the maximum tip credit permissible for every hour worked by its Tipped

18

Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

105.    Indeed, Defendants violated applicable Pennsylvania wage laws by requiring Tipped Employees, including Plaintiff, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as before or after the restaurant was opened/closed to the public. At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

106.    Such conduct constitutes a violation of 43 P.S. 231.34 insofar as Defendants failed to record the hours where Plaintiff and the other Tipped Employee were engaged in non-tip generating work.

107.    Because of the above violations, Defendants owe Plaintiff and the other Tipped Employees the illegally claimed tip credit (in Plaintiff's instance, $4.42) for every hour they worked and were only paid a sub-minimum wage (in Plaintiff's case, $2.83 per hour). Thus, the amounts due and owing are significant.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

108.    Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under PA State Laws.

109.    The claims under the FLSA may be pursued by those who opt-in to this case

pursuant to 29 U.S.C. §216(b). The claims brought pursuant to the PMWA may be pursued by all similarly-situated persons who do not opt-out of the PA Class pursuant to Fed. R. Civ. P. 23.

110.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operate multiple Taprooms, there are likely dozens, if not hundreds, of individuals in each of the Classes.[3]

111.    Defendants have acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

112.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendants and were subject to the same compensation policies and practices.

113.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)     whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)     whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

---

[3] Indeed, Plaintiff estimates that while she was employed at the Pittsburgh Taproom, there were approximately twelve to fifteen Tipped Employees scheduled to work on a typical Friday shift.

(d)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

114.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes. Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

115.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

116.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay practices.

117.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violation of the PMWA.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

118.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

119.    At all relevant times, Defendants have had gross revenues in excess of $500,000.

120.    At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

121.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

122.    Pursuant to their compensation policies, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage, rather than the federally mandated minimum wage.

123.    Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

124.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

125.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

126.    As set forth above, Defendants failed to comply with the FLSA, its applicable regulations (including 29 C.F.R. § 531.56(e)), and DOL guidance (including the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f)) by requiring Plaintiff and the members of the Collective Class to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying said employees at the sub-minimum wage, tip credit rate.

127.    Examples of such non-tipped labor unrelated to the primary duties of Tipped Employees includes, but are not limited to, taking out the trash, bringing in kegs on pallets, rolling

silverware, and stocking inventory.

128.    Pursuant to their compensation policies, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage for the time spent performing this non-tip generating work.

129.    Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

130.    Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**THIRD CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

131.    Plaintiff, on behalf of herself and the Collective Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

132.    As set forth above, Defendants failed to comply with the FLSA, its applicable regulations (including 29 C.F.R. § 531.56(e)), and DOL guidance (including the Department of Labor Field Operations Handbook §30d00(e) and §30d00(f)) by requiring Plaintiff and the members of the Collective Class to perform non-tipped labor related to their tipped occupation for substantial and unreasonable amounts of time in excess of twenty percent (20%) of their regular workweek, and at times that are not contemporaneous to direct-service duties, while paying said employees at the sub-minimum wage, tip credit rate.

133.    Examples of such non-tipped labor related to the primary duties of Tipped

Employees includes, but are not limited to, cutting fruit, stocking ice bins, and rolling silverware.

134.     Defendants required Plaintiff and members of the Collective Class to perform such related but non-tipped work for substantial and unreasonable period of times prior to waiting on any customers, after waiting on last customers, prior to the Taprooms' opening for business and following the Taprooms' close for business.

135.     Pursuant to their compensation policies, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage for the time spent performing this non-tip generating work.

136.     Defendants have violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 et seq. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

137.     Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

138.     Plaintiff, on behalf of herself and the members of the PA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

139.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

140.     Pursuant to their compensation policies, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage rather than the required minimum wage in

Pennsylvania.

141.    As a result of their willful practices, Defendants were not entitled to claim the tip credit and pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

142.    Defendants have violated and, continues to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

143.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW**
**(On Behalf of the PA Class)**

144.    Plaintiff, on behalf of herself and the members of the PA Class, re-alleges and incorporate by reference the paragraphs above as if they were set forth again herein.

145.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

146.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

147.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

148.    For example, Defendants unilaterally altered the compensation scheme Plaintiff had agreed to – earning at least the mandated minimum wage – to a scheme whereby Defendant only paid Plaintiff a subminimum wage.

149.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25%

of the unpaid compensation as liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and members of the PA Class respectfully requests the Court grant the following relief:

A. Designation of this action as a collective action on behalf of the Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B. Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C. Designation of Plaintiff as representative of the Collective Class and the PA Class;

D. Designation of Plaintiff's counsel as class counsel for the Collective Class and the PA Class;

E. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, PMWA, and WPCL;

F. An injunction against Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G. An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H. An award of liquidated damages to Plaintiff and members of the Classes;

I. An award of interest to Plaintiff and members of the PA Class;

J. An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K.     Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by the complaint.


Dated: January 8, 2024                                        Respectfully submitted,

                                                                        **JAMES, MCELROY & DIEHL, P.A.**

                                                                        By: /s/ J. Alexander Heroy
                                                                        J. Alexander Heroy
                                                                        525 North Tryon Street, Suite 700
                                                                        Charlotte, NC 28202
                                                                        Telephone: 704-372-9870
                                                                        Facsimile: 704-333-5508
                                                                        Email: aheroy@jmdlaw.com

                                                                        **CONNOLLY WELLS & GRAY, LLP**
                                                                        Gerald D. Wells, III
                                                                        Robert J. Gray
                                                                        101 Lindenwood Drive, Suite 225
                                                                        Malvern, PA 19355
                                                                        Telephone: 610-822-3700
                                                                        Facsimile: 610-822-3800
                                                                        Email: gwells@cwglaw.com
                                                                                rgray@cwglaw.com

                                                                        *Attorneys for the Plaintiff and the*
                                                                        *Proposed Classes*